# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO.   1:21-cv-24426

SHERI CLAYTON,

individually, and on behalf of all others
similarly situated,

        Plaintiff,

vs.

THE PROCTER & GAMBLE COMPANY,
an Ohio Corporation,

        Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff, Sheri Clayton ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint ("CAC") against The Procter & Gamble Company, ("Defendant"), and in support states the following:

## NATURE OF THE ACTION

1.    This is a class action lawsuit by Plaintiff, and all others similarly situated, who purchased certain aerosol antiperspirant, shampoo, and conditioner sprays manufactured, sold and distributed by Defendant. Defendant distributes, markets and sells several over-the-counter aerosol antiperspirant, shampoo, and conditioner products sold under the brand names "Old Spice" and "Secret" (antiperspirants) and "Pantene," "Aussie," "Herbal Essences," "Hair Food," and "Waterl<ss" (dry shampoos and dry conditioners) (collectively, the "Aerosol Products"). Several of Defendant's Aerosol Products sold under these brand names have been independently

tested and shown to be adulterated with benzene, a known human carcinogen. The presence of benzene in Defendant's Aerosol Products was not disclosed in the products' label, in violation of state and federal law. Plaintiff and the putative class suffered economic damages due to Defendant's misconduct (as set forth below) and they seek injunctive relief and restitution for the full purchase price of the Aerosol Products they purchased. Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and Plaintiff is a citizen of a state different from Defendant.

3.      This Court has jurisdiction over Defendant because Defendant is authorized to conduct and do business in Florida. Defendant has marketed, promoted, distributed, and sold the Aerosol Products in Florida and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District.

**THE PARTIES**

5.      Plaintiff Sheri Clayton ("Clayton") resides in Harrison, Arkansas and frequents Florida.  On numerous occasions throughout the last several years, Clayton purchased Waterl<ss Dry Shampoo No Residue, among other Aerosol Products, from various retailers in Arkansas and South Florida. She paid several dollars for each for the Aerosol Products. During that time, based on the false and misleading claims by Defendant, Clayton was unaware that Defendant's Aerosol Products maybe adulterated with benzene. Clayton purchased the Defendant's Aerosol Products on the assumption that the labeling of Defendant's Aerosol Products was accurate Clayton would not have purchased Defendant's Aerosol Products had she known there was a risk the products may contain benzene, a known human carcinogen. As a result, Plaintiff suffered injury in fact when she spent money to purchase products she would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

6.      Defendant The Procter & Gamble Company is an Ohio corporation with its principal place of business at 1 P&G Plaza, Cincinnati, OH 45202. As one of the world's leading brands of skin care, hair care and cosmetics, Defendant distributes its products, including the Aerosol Products, throughout the United States. Defendant's line of Aerosol Products, including the adulterated antiperspirant purchased by Plaintiff and members of the putative class, are available at retail stores throughout Florida and the United States.

**FACTUAL ALLEGATIONS**

7.      Defendant manufactures, markets, advertises, labels, distributes, and sells a variety of Aerosol Products, including aerosol antiperspirants sold under the brand names Old Spice and Secret.

8.      In 2021, Valisure LLC and ("Valisure"), an analytical pharmacy, ran tests on a

variety of Defendant's Aerosol Products. Specifically, Valisure tested numerous lots of Defendant's Old Spice and Secret Aerosol Products. Through its testing, Valisure discovered that all the tested Aerosol Products sold under the name brand Secret contain benzene, with values ranging from 0.10 ppm to 2 ppm, and more than 2 ppm up to 16.2 ppm. Through its testing, Valisure also discovered that many of the tested Aerosol Products sold under the name brand Old Spice contain benzene, with values ranging from less than .1 ppm, 0.10 ppm to 2 ppm, and more than 2 ppm up to 17.7 ppm. For reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "skin absorption" as an exposure route.[1] Notably, benzene is not listed as an active or inactive ingredient on any of the labels of the Defendant's Aerosol Products. Moreover, all the Aerosol Products are marketed and advertised in an identical manner—as "Antiperspirant."

9.     On November 4, 2021, Valisure filed a citizen petition with the Food and Drug Administration ("FDA") asking the agency to recall all batches of Defendant's Aerosol Products tested that (as tested) contained 0.1 ppm or more of benzene, on the basis that they are adulterated under Section 501 of the FDCA (21 U.S.C. § 351) and misbranded under Section 502 of the FDCA (21 U.S.C. § 352).

10.     Subsequent to the Valisure petition, Defendant recalled antiperspirant Aerosol Products. More recently, Defendant expanded the recall to include dry shampoo and dry conditioner Aerosol Products as well after reviewing the rest of its aerosol products and finding

---

[1] Centers for Disease Control and Prevention. *The National Institute for Occupational Safety and Health (NIOSH), Benzene* (https://www.cdc.gov/niosh/npg/npgd0049.html).

benzene in them as well.[2] P&G admits that "benzene is not an ingredient in any of our products."[3]

11. Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years. According to the National Toxicology Program ("NTP"), benzene is "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[4] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC"). Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[5] As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on *sufficient evidence* of carcinogenicity in humans, *sufficient evidence* of carcinogenicity in experimental animals, and *strong* mechanistic evidence .… The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[6]

Likewise, the Food and Drug Administration ("FDA") recognizes that "[b]enzene is a

---

[2] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/pg-issues-voluntary-recall-aerosol-dry-conditioner-spray-products-and-aerosol-dry-shampoo-spray.
[3] *Id.*
[4] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis added).
[5] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017: Lyon, France), at p. 33.
[6] *Id.* at 34.

carcinogen that can cause cancer in humans"[7] and classifies benzene as a "Class 1" solvent that should be "avoided."[8] FDA's Guidance for Industry states that "Solvents in Class 1 . . . should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[9]

12. The FDA regulates antiperspirants to ensure they meet safety and effectiveness standards.[9] The FDA regulates antiperspirants, including some of the Aerosol Products at issue here, as over-the-counter ("OTC") drugs rather than as cosmetics. The FDA defines Antiperspirant as a "drug product applied topically that reduces the production of perspiration (sweat) at that site."[10] As an FDA-regulated product, antiperspirants must pass certain tests before they are sold.

13. Per the FDA regulations governing Defendant's Aerosol Products, titled "Antiperspirant Drug Products for Over-the-Counter Human Use," there are certain acceptable active ingredients in products that are labeled as Antiperspirant.[11] Benzene, a known human carcinogen, is not on the FDA's list of acceptable active or inactive ingredients for Aerosol Products. Nor is benzene identified as an active or inactive ingredient on any of the Defendant's Aerosol Products. Nevertheless, Defendant proclaims in its advertising that benzene is one of the materials "we do not use as ingredients in any of our formulated products,"[12] which is a false and misleading statement.

---

[7] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q1.

[8] https://www.fda.gov/media/71737/download.

[9] FDA Guidance for Industry, Q3C Impurities: Residual Solvents (6/30/2017), available at https://www.fda.gov/media/71736/download.

[10] 21 C.F.R. § 350.3.

[11] 21 C.F.R. § 350.10.

[12] https://us.pg.com/ingredients/

14.     The governing regulations provide: "An over-the-counter antiperspirant drug product in a form suitable for topical administration is generally recognized as safe and effective and is not misbranded if it meets each condition in this part and each general condition established in § 330.1 of this chapter."[13] Defendant failed to meet this standard as further described herein.

15.     The manufacture of any misbranded or adulterated drug is prohibited under federal law[14] and Florida state law.[15]

16.     The introduction into commerce of any misbranded or adulterated drug is similarly prohibited.[16]

17.     The receipt in interstate commerce of any adulterated or misbranded drug is also unlawful.[17]

18.     Among the ways a drug may be adulterated are:

> If it consists in whole or in part of any filthy, putrid, or decomposed substance; or . . . whereby it may have been rendered injurious to health;[18]

19.     A drug is misbranded:

> (a) "If its labeling is false or misleading in any particular."[19]

---

[13] 21 C.F.R. § 350.1.

[14] 21 U.S.C § 331(g).

[15] *See* Fla. Stat. § 499.005(1) ("It is unlawful for a person to perform or cause the performance of any of the following acts in this state: (1) The manufacture, repackaging, sale, delivery, or holding or offering for sale of any drug, device, or cosmetic that is adulterated or misbranded or has otherwise been rendered unfit for human or animal use.").

[16] 21 U.S.C. §331(a); Fla. Stat. § 499.005(1).

[17] 21 U.S.C. §331(c); *see also* Fla. Stat. § 499.005(3)("It is unlawful for a person to perform or cause the performance of any of the following acts in this state: … (3) The receipt of any drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery ofsuch drug, device, or cosmetic, for pay or otherwise.").

[18] 21 U.S.C. §351(a)(2)(B); *see also* Fla. Stat. § 499.006(1) & (2) ("A drug or device is adulterated, if any of the following apply: (1) It consists in whole or in part of any filthy, putrid, or decomposed substance[;] (2) It has been produced, prepared, packed, or held under conditionswhereby it could have been contaminated with filth or rendered injurious to health.").

[19] 21 U.S.C. §352(a)(1); *see also* Fla. Stat. § 499.007(1) (A drug is misbranded "[i]f its labelingis in any way false or misleading.")

(b) If the labeling does not contain, among other things, "the proportion of each active ingredient[.]"[20]

(d) "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."[21]

20.     If a manufacturer labels a drug but omits ingredients, that renders the drug misbranded.[22]

21.     Certain shampoo and conditioner products are regulated by the FDA as drugs as well, while others are regulated as cosmetics.[23]   Either way, none of the dry shampoo and conditioner products included among the Aerosol Products at issue here disclosed benzene as an ingredient or component of any kind.

22.     Defendant did not disclose that benzene, a known human carcinogen, may be present in the Aerosol Products purchased by Plaintiff and the putative class members. As a result, its Aerosol Products are adulterated and misbranded. There is "no safe level of benzene" exposure, so it is unsuitable for human application as an ingredient in any antiperspirant,[24] or dry

---

[20] 21 U.S.C. §352(e)(1)(A)(ii). *See also* Fla. Stat. § 499.007(2)(b) ("A drug or device is misbranded: … (2) If in package form, it does not bear a label containing: (b) An accurate statement of the quantity of the contents in terms of weight, measure, or numerical count.").

[21] 21 U.S.C. §352(j); *see also* Fla. Stat. § 499.007(10) (A drug is misbranded "[i]f it is dangerous to health when used in the dosage or with the frequency or duration prescribed, recommended, or suggested in the labeling of the drug.")

[22] 21 C.F.R. §§201.6. "The labeling of a drug may be misleading by reason (among other reasons) of: … (2) Failure to reveal the proportion of, or other fact with respect to, an ingredient present in such drug, when such proportion or other fact is material in the light of the representation that such ingredient is present in such drug." 21 C.F.R. §201.10(2). See also Fla. Stat. § 499.007(2)(b) ("A drug or device is misbranded: … (2) If in package form, it does not bear a label containing: (b) An accurate statement of the quantity of the contents in terms of weight, measure, or numerical count.").

[23] https://www.fda.gov/industry/fda-basics-industry/are-all-personal-care-products-regulated-cosmetics.

[24] https://www.who.int/ipcs/features/benzene.pdf.

shampoo or conditioner.

23.     Defendant wrongfully advertised and sold the Aerosol Products without any labeling to indicate to consumers that these products may contain benzene. The following image shows an example:



10

24.     In addition, Defendant maintains a "smartlabel.pg.com" webpage identifying the active and inactive ingredients in its products, and benzene is not listed as an ingredient in any of its Aerosol Products. [25] In fact, Defendant specifically promises to consumers that benzene is one of the materials "we do not use as ingredients in any of our formulated products."[26]



25.     Further, Defendant has admitted that benzene was not an ingredient for any of its dry shampoo or dry conditioner products, but that it found benzene in those products included amongst the Aerosol Products.[27]

---

[25] https://smartlabel.pg.com/00037000730347.html; https://smartlabel.pg.com/00037000711087.html
[26] https://us.pg.com/ingredients/
[27] https://www.fda.gov/industry/fda-basics-industry/are-all-personal-care-products-regulated-cosmetics

26.     Plaintiff has standing to represent members of the putative class because there is sufficient similarity between the specific Aerosol Products purchased by the Plaintiff and the other Aerosol Products not purchased by Plaintiff. Specifically, each and every one of Defendant's Aerosol Products (i) are marketed in substantially the same way – as "Antiperspirant" or "Dry Shampoo" or "Dry Conditioner" — and (ii) fail to include labeling indicating to consumers that the Aerosol Products may contain benzene as an active or inactive ingredient. Accordingly, the misleading effect of all the Aerosol Products is substantially the same.

27.     Plaintiff references federal law in this Complaint not in any attempt to enforce it, but to demonstrate that their state-law tort claims do not impose any additional obligations on Defendant, beyond what was already required of them under federal law.

## CLASS ALLEGATIONS

28.     Plaintiff brings this action on behalf of herself and all other similarly situated class members (the "Class") pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class against Defendant for violations of Florida state laws and/or similar laws in other states:

> **Nationwide Class Action**
>
> All consumers who purchased any Aerosol Product sold under the name brand Secret and/or Old Spice in the United States of America and its territories from November 4, 2017 to the present for personal use or consumption.
>
> Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Defendant's Aerosol Products. Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this

matter.

29.     In the alternative, Plaintiff brings this action on behalf of herself and all other similarly situated Florida consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

### Florida and Arkansas-Only Class Action

All consumers who purchased any Aerosol Product sold under the brand names "Old Spice" and "Secret" (antiperspirants) and "Pantene," "Aussie," "Herbal Essences," "Hair Food," and "Waterl<ss" (dry shampoos and dry conditioners) in the States of Florida and Arkansas from November 4, 2017 to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Defendant's Aerosol Products. Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

30.     The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of Defendant's Aerosol Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff at this time.

31.     Plaintiff's claims are typical to those of all Class members because members of the Class are similarly injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive claims that accompanied Defendant's Aerosol Products. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

32.     Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The

claims of Plaintiff and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

 (a)  whether Defendant's Aerosol Products contained benzene;

 (b)  whether Defendant's omissions are true, or are misleading, or objectively likely to deceive a reasonable consumer;

 (c)  whether the alleged conduct constitutes violations of the laws asserted;

 (d)  whether Defendant's alleged conduct violates public policy;

 (e)  whether Defendant engaged in false or misleading advertising;

 (f)  whether Defendant was unjustly enriched as a result of its labeling, marketing, advertising and/or selling of the Aerosol Products;

 (g)  whether Plaintiff and the Class members are entitled to damages and/or restitution and the proper measure of that loss; and

 (h)  whether an injunction is necessary to prevent Defendant from continuing to market and sell defective and adulterated Aerosol Products that contain benzene, a known human carcinogen.

33.  Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the Class. Plaintiff intends to prosecute this claim vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses.

34.  A class action is superior to the other available methods for a fair and efficient

adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiff and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

35.     The Class also may be certified because Defendant has acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

36.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described above, such as continuing to market and sell Aerosol Products that may be adulterated with benzene, and requiring Defendant to provide a full refund of the purchase price of the Aerosol Products to Plaintiff and Class members.

37.     Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and the Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## COUNT I
## <u>Violation of Florida and Arkansas Deceptive and Unfair Trade Practices Acts</u>
### (On Behalf of the Florida and Arkansas-Only Class)

38.     Plaintiff incorporates by reference and re-alleges each and every allegation

contained above, as though fully set forth herein.

39.     Plaintiff brings this claim individually and on behalf of the Class.

40.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders unlawful unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of any trade or commerce. § 501.204, Fla. Stat.

41.     Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202, Fla. Stat.

42.     The Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-107, *et seq.*, prohibits deceptive and unconscionable trade practices including any "unconscionable, false, or deceptive act or practice in business, commerce, or trade."

43.     Among other purposes, the ADTPA prohibits any "act that affront[s] the sense of justice, decency, or reasonableness." *Baptist Health v. Murphy,* 365 Ark. 115, 128 n.6, 226 S.W.3d 800 (2006).

44.     As alleged herein, Plaintiff has suffered injury in fact and lost money as a result of Defendant's conduct because she purchased Aerosol Products from Defendant in reliance on Defendant's representation that the ingredients in its Aerosol Products were safe and effective and were not adulterated with benzene, a known human carcinogen.

45.     As alleged herein, Defendant's actions are deceptive and in clear violation of FDUTPA, entitling Plaintiff and the Class to damages and relief under Fla. Stat. §§ 501.201-213, and in violation of the ADTPA.

46.     Defendant has engaged, and continues to engage, in conduct that is likely to

deceive members of the public. This conduct includes representing in its labels that its Aerosol Products contain only the ingredients listed in the label, which is untrue, and failing to make any mention that the certain Aerosol Products are adulterated with benzene, a known human carcinogen.

47.     Similarly, Defendant has engaged, and continue to engage, in deceptive, untrue, and misleading advertising by specifically promising consumers that benzene is one of the materials "we do not use as ingredients in any of our formulated products."[28] Defendant also misleads consumers by promising, amongst other things, (i) that safety is "at the heart of everything we do," (ii) that it has a "rigorous safety process to analyze every ingredient-before we ever consider putting it in one of our products"; (iii) that "we evaluate all ingredients in the product to ensure they are safe when used – both for you and the environment."[29]

48.     By committing the acts alleged above, Defendant has engaged in unconscionable, deceptive, or unfair acts or practices, which constitute unfair competition within the meaning of FDUTPA and the ADTPA.[30]

49.     Defendant's conduct is substantially injurious to consumers. Consumers are purchasing and, as instructed in the label, "apply[ing] to underarms" Defendants' Aerosol Products, or to the hair and scalp, without knowledge that there is a risk the Aerosol Products may be adulterated with a human carcinogen. This conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid for antiperspirants potentially adulterated with benzene but for Defendant's false labeling, advertising, and

---

[28] https://us.pg.com/ingredients/.

[29] https://us.pg.com/product-safety/.

[30] Defendant's conduct violates Section 5 of the Federal Trade Commission "("FTC") Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts orpractices in or affecting commerce.

promotion. Thus, Plaintiff and the putative Class have been "aggrieved" (*i.e.* lost money) as required for FDUTPA standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition, and similarly as required for standing under the ADTPA.

50.     Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on Defendant's representation of the ingredients contained in it Aerosol Products' labels, and injury resulted from ordinary use of the Aerosol Products, consumers could not have reasonably avoided such injury.

51.     Further, Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary. Plaintiff is a long-time user of Defendant's Aerosol Products, and she desires to purchase Defendant's Aerosol Products in the future if she can be assured that the Aerosol Products are unadulterated and meet the advertising claims. Absent injunctive relief, Defendant may continue to advertise, promote and sell adulterated Aerosol Products that deceive the public as to their ingredients and safety. Plaintiff is thus likely to again be wronged in a similar way. For example, if Plaintiff encounters Defendant's Aerosol Products in the future and there is a risk those products still contain benzene, Plaintiff may mistakenly rely on the product's label to believe that Defendant eliminated benzene when it did not.

52.     Florida Statutes, Section 501.204, makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

53.     Florida Statutes, Section 501.211, creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

54.     Florida Statutes, Section 501.2105, provides that the prevailing party in litigation arising from a cause of action pursuant to Chapter 501 shall be entitled to recover attorney's fees within the limitations set forth therein form the non-prevailing party.

55.     Florida Statutes, Section 501.213, provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

56.     Florida Statutes, Section 501.203 (3)(c), states that a person has violated the FDUTPA if it violates "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices."

57.     Defendant is engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce Aerosol Products which constitutes trade and commerce as defined by Sections 501.203(8) Fla. Stat., and is therefore subject to FDUPTA.

58.     As a result of Defendant's unfair and deceptive trade practices, Plaintiff and the putative Class are entitled to an award of attorney's fees pursuant to FDUTPA, Florida Statutes, Section 501.2105, if she prevails.

59.     As a result of Defendant's unfair and deceptive trade practices, Plaintiff and the putative Class are entitled to an award of actual damages and attorney's fees pursuant to the ADTPA, if she prevails, Ark. Code Ann. § 4-88-113(f).

60.     Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter. Defendant's conduct with respect to the labeling, advertising, marketing, and sale of Aerosol Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, doesnot outweigh the gravity of the harm to its victims.

61.     In accordance with FDUTPA[31] and the ADTPA, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

62.     On behalf of Plaintiff and the putative Class, Plaintiff also seeks an order entitling them to recover all monies spent on the Defendant's Aerosol Products, which were acquired through acts of fraudulent, unfair, or unlawful competition.[32] In addition, the measure of restitution should be a full refund of the purchase price insofar as the Aerosol Products and their associated labels are worthless. But for Defendant's misrepresentations and omissions, Plaintiff would have paid nothing for Aerosol Products that have a risk of containing a known human carcinogen (*i.e.* benzene). Indeed, there is no discernible "market" for an over-the-counter antiperspirant product that may be adulterated with a known human carcinogen. As recognized by the WHO, "[b]enzene is carcinogenic to humans, and no safe level of benzene can be recommended."[33] As a result, the Defendant's Aerosol Products are rendered valueless.

63.     Plaintiff and members of the Class are entitled to injunctive and equitable relief, and a full refund in the amount they spent on the Defendant's Aerosol Products.

### COUNT II
### <u>Unjust Enrichment</u>
### (On Behalf of the Nationwide Class and Florida and
### Arkansas-Only Class)

64.     Plaintiff incorporates by reference and re-alleges each and every allegation

---

[31] Section 501.211(1) allows "anyone aggrieved by a violation of" FDUTPA to seek declaratory or injunctive relief. Fla. Stat. §501.211.

[32] Section 501.211(2) provides that "a person who has suffered a loss as a result of a [FDUTPA] violation ... may recover actual damages."

[33] https://www.who.int/ipcs/features/benzene.pdf.

contained above, as though fully set forth herein.

65. As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiff and members of the Class when they purchased the Aerosol Products.

66. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

67. As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

68. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

69. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Aerosol Products to Plaintiff and members of the Class.

70. Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

71. The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class.

72. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

73. Finally, Plaintiff and members of the Class may assert an unjust enrichment claim

even though a remedy at law may otherwise exist.[34]

## COUNT III
## Breach of Implied Warranty
### (On Behalf of the Nationwide Class and Florida and
### Arkansas-Only Class)

74.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

75.     Defendant was at all relevant times the manufacturer, distributor, warrantor and/or seller of the Aerosol Products. Defendant knew or had reason to know of the specific use for which its Aerosol Products were purchased.

76.     At the time Defendant marketed and otherwise placed its Aerosol Products into the stream of commerce, it knew of the particular purpose for which Plaintiff and the Class members purchased the Aerosol Products—to have a safe and effective antiperspirant, which did not contain any dangerous carcinogens. Defendant also knew that consumers, including Plaintiff and members of the Class, would have no ability or opportunity to determine the ingredients in the Aerosol Products, but instead would rely on Defendant's representations that the Aerosol Products were suitable for their particular purpose and free of dangerous carcinogens (*i.e.,* benzene).

77.     At all times, Plaintiff and the Class members used the Aerosol Products in the manner that was intended for use.

78.     Defendant provided Plaintiff and the Class members with an implied warranty that

---

[34] *See State Farm Mut. Auto Ins. Co. v. Physicians Injury Care Ctr.,* 427 F. App'x 714, 723 (11th Cir. 2011), *rev'd on other grounds*, 824 F.3d 1311 (The general rule that "equitable remedies are not available under Florida law when adequate legal remedies exist . . . does not apply to unjust enrichment claims."); *see also Morris v. ADT Sec. Services*, 580 F.Supp.2d 1305, 1312-13 (S.D. Fla. 2008); *In re Monat Hair Prods. Mktg., Sales Prac., and Prods. Liab. Litig*., 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019); *Garcia v. Clarins USA, Inc.*, 2014 WL 11997812, at *5(S.D. Fla. Sept. 5, 2014); *Goldberg v. Chong,* 2007 WL 2028792 at *9 (S.D. Fla. July 11, 2007).

its Aerosol Products were merchantable and fit for the ordinary purposes for which they sold and not dangerous or hazardous to the user's health.

79. Further, as the intended consumers and ultimate users of the Aerosol Products, Plaintiff and the Class members are intended third-party beneficiaries of any contracts between Defendant and any retailers from whom Plaintiffs obtained Aerosol Products, which contain the implied warranty of merchantability and to be fit for ordinary purposes, safe and not hazardous to one's health. Plaintiff and the Class members, not any retailers, are the parties intended to benefit by any such contract because they are the people using the Aerosol Products in the manner intended.

80. In breach of the implied warranty of merchantability, the Aerosol Products that Defendant provided to Plaintiff and the Class members are not fit and suitable for their ordinary purpose because, inter alia, they contain dangerous carcinogens with the potential of causing serious injury and/or death. Defendant's Aerosol Products supplied to Plaintiff and the Class members did not possess the basic degree of fitness for ordinary use due to the defects described herein. The defects are so basic that they render the Aerosol Products unfit for their ordinary purposes. As such, they are not merchantable.

81. As a direct and proximate result of Defendant's breach, Plaintiff and the Class members have suffered, and will continue to suffer, significant damages, loss and injury in an amount that will be established at trial.

82. Plaintiff and the Class members are entitled to legal and equitable relief against Defendant, including consequential damages, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## COUNT IV
### Breach of Express Warranty
**(On Behalf of the Nationwide Class and Florida and Arkansas-
Only Class)**

83.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

84.     Plaintiff and each Class member formed a contract with Defendant at the time Plaintiff and the other Class members purchased the Defendant's Aerosol Products. The terms of the contract include the promises and affirmations of fact made by Defendant on its Aerosol Products packaging and through marketing and advertising, including the promise that benzene is one of the materials "we do not use as ingredients in any of our formulated products."[35] This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract that Defendant entered into with Plaintiff and each Class member.

85.     Defendant expressly warranted that its Aerosol Products were fit for their ordinary use, *i.e.*, as a safe and FDA-compliant product suitable for human application "that reduces the production of perspiration (sweat) at that site." It also expressly warranted that its Aerosol Products were not adulterated or misbranded.

86.     Defendant's Aerosol Products did not conform to Defendant's express representations and warranties because they were not manufactured in compliance with FDA standards, were not suitable for human application, and were adulterated and misbranded.

87.     At all times relevant all the following States and Territories have codified and adopted the provisions of the Uniform Commercial Code: Ala. Code § 7-2-313; Alaska Stat. §

---

[35] https://us.pg.com/ingredients/.

45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. Code. § 2-313; D.C. Code. § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1-2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code. Ann. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. § 70A-2-313; Va. Code § 8.2-313; Vt. Stat. Ann. 9A § 2-313; W. Va. Code § 46-2-313; Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann. § 402.313 and Wyo. Stat. § 34.1-2-313.

88.     At the time that Defendant marketed and sold its Aerosol Products, it recognized the purposes for which the products would be used, and expressly warranted the products were suitable for human application, FDA compliant and not adulterated or misbranded.   These affirmative representations became part of the basis of the bargain in every purchase by Plaintiff and each Class member, including but not limited to the express representation Defendant made that benzene is not an ingredient used in any of its products.

89.     Plaintiff and each Class member are natural persons who are reasonably expected to use, consume, or be affected by the adulterated and/or misbranded Aerosol Products

manufactured and sold by Defendant.

90.     Defendant breached its express warranties with respect to its Aerosol Products because the products were not suitable for human application, did not comply with FDA standards, and were adulterated and misbranded.

91.     Plaintiffs and each Class member would not have purchased the Aerosol Products had they known the products contained benzene, were not suitable for human application, did not comply with FDA standards, and/or were adulterated and misbranded.

92.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and other Class members have been injured and suffered damages in the amount of the purchase price of their Aerosol Products, and any consequential damages resulting from the purchases, in that the Aerosol Products they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.     An order declaring this action to be a proper class action, appointing Plaintiff and their counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.     An order enjoining Defendant from selling the Aerosol Products;

C.     An order enjoining Defendant from suggesting or implying that the Aerosol Products are safe andeffective for human application;

D.     An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling

existing Aerosol Products;

E.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.    An order requiring Defendant to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising in violation of the FDUTPA and the ADTPA, plus pre- and post-judgment interest thereon;

G.    An order requiring Defendant to disgorge any ill-gotten benefits received from Plaintiff and members of the Class as a result of any wrongful or unlawful act or practice;

H.    An order requiring Defendant to pay appropriate damages for breach of implied warranties;

I.    An order requiring Defendant to pay appropriate damages for breach of express warranties;

J.    An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

K.    An order awarding attorneys' fees and costs to Plaintiff and the Class; and

L.    An order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 22, 2021

Respectfully submitted,

*/s/Yitzhak S. Levin*
Yitzhak Levin, Esq.
Levin Litigation, PLLC
3475 Sheridan Street, Ste. 311
Hollywood, Florida 33021
(954) 678-5155 - Telephone
(954) 678-5156 – Facsimile
ylevin@levinlitigation.com - E-Mail
service@levinlitigation.com - E-Service

/s/*Ruben Honik*
Ruben Honik, Esq. (*pro hac vice pending)*
David J. Stanoch, Esq. (*pro hac vice pending*)
**HONIK LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (267) 435-1300
Email:  ruben@honiklaw.com
         david@honiklaw.com

/s/ *Conlee S. Whiteley*
Conlee S. Whiteley, Esq. (*pro hac vice pending*)
Layne Hilton, Esq. (*pro hac vice pending*)
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
Phone: (504) 524-5777
Email:  c.whiteley@kanner-law.com
         l.hilton@kanner-law.com